UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| R&G PRODUCE COMPANY | § | |
|     *Plaintiff* | § | |
| | § | |
| | § | |
| v. | § | Civil Action |
| | § | _____ |
| | § | |
| WILLIAMS FARMS PRODUCE SALES, INC. | § | |
| JAMES W. WILLIAMS, FAYE WILLIAMS, | § | |
| MARK T. WILLIAMS, JIM WILLIAMS, & | § | |
| WILLIAM ANTHONY WILLIAMS | § | |
|     *Defendants* | § | |

PLAINTIFF'S ORIGINAL COMPLAINT FOR FRAUDULENT TRANSFER

TO THE HONORABLE COURT:

COMES NOW R&G PRODUCE COMPANY, Plaintiff herein, and files its ORIGINAL COMPLAINT FOR FRAUDULENT TRANSFER against WILLIAMS FARMS PRODUCE SALES, INC., JAMES W. WILLIAMS, FAYE WILLIAMS, MARK T. WILLIAMS, JIM WILLIAMS, & WILLIAM ANTHONY WILLIAMS, and for cause of action would show the Court and Jury as follows:

I. Summary

1.      This fraudulent transfer complaint arises out of a lawsuit R&G PRODUCE COMPANY ("R&G") filed against Defendant WILLIAMS FARMS PRODUCE SALES, INC. ("WILLIAMS FARMS") in the Cameron County Court At Law No. 1 in May 2008. After many delays, including from failed appeals, jury trial began November 28,

2011. On December 7, the jury returned a unanimous verdict in favor of R&G and awarded damages against WILLIAMS FARMS in the amount of $2,332,596.44. The Court entered Final Judgment on the verdict on December 13. Including prejudgment interest, the Judgment totals $2,668,730.44. WILLIAMS FARMS has neither paid the Judgment, nor posted bond, deposit, or security to suspend execution or enforcement of the judgment.

2.      On March 13, 2012, the trial court enjoined WILLIAMS FARMS from dissipating or transferring assets to avoid satisfaction of the judgment. The Court reiterated its order with a second similar order on April 10.

3.      In its last three tax returns, WILLIAMS FARMS reported gross sales of $101 million, and total income of $8.7 million. In addition, corporate bank records establish that in the 12-month period before the jury's verdict, WILLIAMS FARMS deposited $39,436,536.87 into its corporate bank accounts. Despite a total income of $8.7 million, and bank deposits of over $39.4 million, WILLIAMS FARMS claims it now has only $3,128 of cash on hand. WILLIAMS FARMS deliberately and intentionally violated the Court's orders prohibiting dissipating or transfer of assets, and systematically transferred large amounts of cash out of the debtor corporation to avoid satisfaction of the judgment.

4.    On May 15[1], and August 7,[2] 2012 the Cameron County Court At Law No. 1 found WILLIAMS FARMS to be in contempt of court for its deliberate and intentional dissipation or transfer of assets to avoid satisfaction of judgment. The Court ordered WILLIAMS FARMS to pay a fine of $260,000, and attorneys' fees of $2,600.

5.    The Court also directed that writ of attachment issue for the arrest of Defendant JAMES W. WILLIAMS, President of WILLIAMS FARMS, compelling him to appear in person in the County Court At Law No. 1 to determine whether the contemnor corporation had complied with the Order.

6.    Despite the writ, JAMES W. WILLIAMS failed to appear. The trial court found he was aware that he was personally ordered to appear at the stated time on the stated date, and that his refusal was willful and deliberate. The Court found Defendant JAMES W. WILLIAMS personally in contempt of court, and ordered that he pay a fine of $500 for each day that WILLIAMS FARMS failed to comply with the Court's contempt order against WILLIAMS FARMS.

7.    To date, WILLIAMS FARMS has neither paid the fine nor the attorneys' fees.

8.    However, WILLIAMS FARMS' didn't fraudulently transfer money or cash only to avoid satisfaction of the judgment. WILLIAMS FARMS also attempted to fraudulently

---

[1] *See* the Order of Contempt found at Exhibit 10.

[2] *See* the Second Order of Contempt and Order for Writ of Attachment found at Exhibit 15.

transfer a cause of action for money damages it is asserting against the United States government in Federal District Court in South Carolina.

9.      As a result, R&G PRODUCE COMPANY seeks remedies provided by the Texas Uniform Fraudulent Transfer Act, including payment of the contempt fine, attorneys' fees, avoidance of the transfers described above to the extent necessary to satisfy Plaintiff's judgment, attachment of the assets the subject of the transfers, an injunction against further disposition by the debtor or transferees or both, execution of the assets transferred or the proceeds therefrom, and any other relief the circumstances may require.

II. Nature of This Action

2.0     As mentioned, this fraudulent transfer action arises under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), found at Chapter 24 *et. seq.* of the TEXAS BUSINESS & COMMERCE CODE. At the time of the transfers in question, Plaintiff was a "creditor" of Defendant WILLIAMS FARMS. The individual defendants are the five 20% owners, officers, and directors of WILLIAMS FARMS. The transfers were fraudulent as to Plaintiff under TUFTA because they were made with actual intent to hinder, delay, or defraud Plaintiff.

### III. Parties

3.0     Plaintiff R&G PRODUCE COMPANY is a proprietorship owned by Gracie Lopez (99%) and her husband Roel Canales (1%), located in Cameron County, Texas.[3]

3.1     Defendant WILLIAMS FARMS PRODUCE SALES, Inc. is a South Carolina corporation, which may be served with summons and complaint through its registered agent, James W. Williams, at 7622 Ashton Road, Islandton, SC 29989.

3.2     Defendant JAMES W. WILLIAMS is the President and 20% owner of WILLIAMS FARMS PRODUCE SALES, INC. He is also the husband of Defendant FAYE WILLIAMS, and father of Defendants MARK T. WILLIAMS, JIM WILLIAMS, and WILLIAM ANTHONY WILLIAMS. JAMES W. WILLIAMS may be served with summons and complaint at 7622 Ashton Road, Islandton, SC 29989.

3.3     Defendant FAYE WILLIAMS is an officer and 20% owner of WILLIAMS FARMS PRODUCE SALES, INC. She is also the wife of Defendant JAMES W. WILLIAMS, and mother of Defendants MARK T. WILLIAMS, JIM WILLIAMS, and WILLIAM ANTHONY WILLIAMS. FAYE WILLIAMS may be served with summons and complaint at 7622 Ashton Road, Islandton, SC 29989.

3.4     Defendant MARK T. WILLIAMS is an officer and 20% owner of WILLIAMS FARMS PRODUCE SALES, INC. He is also the son of Defendants JAMES W.

---

[3] R&G Produce Company's Assumed Name of Business is found at Exhibit 1.

WILLIAMS & FAYE WILLIAMS, and the brother of Defendants JIM WILLIAMS and WILLIAM ANTHONY WILLIAMS. MARK T. WILLIAMS may be served with summons and complaint at 7622 Ashton Road, Islandton, SC 29989.

3.5     Defendant JIM WILLIAMS is an officer and 20% owner of WILLIAMS FARMS PRODUCE SALES, INC. He is also the son of Defendants JAMES W. WILLIAMS & FAYE WILLIAMS, and the brother of Defendants MARK T. WILLIAMS and WILLIAM ANTHONY WILLIAMS. JIM WILLIAMS may be served with summons and complaint at 7622 Ashton Road, Islandton, SC 29989.

3.6     Defendant WILLIAM ANTHONY WILLIAMS is an officer and 20% owner of WILLIAMS FARMS PRODUCE SALES, INC. He is also the son of Defendants JAMES W. WILLIAMS & FAYE WILLIAMS, and the brother of Defendants MARK T. WILLIAMS and JIM WILLIAMS. WILLIAM ANTHONY WILLIAMS may be served with summons and complaint at 7622 Ashton Road, Islandton, SC 29989.

## IV. Jurisdiction and Venue

4.0     This Court has subject matter jurisdiction over this complaint based on diversity pursuant to 28 U.S.C. § 1332 *et. seq.*

4.1     This action arises out of a Final Judgment entered on a jury verdict in, and a series of post-judgment orders by, the County Court At Law No.1 of Cameron County, Texas. The post-judgment orders include orders enjoining the dissipation or transfer of

assets, and orders of contempt and imposition of fine against Defendant WILLIAMS

FARMS PRODUCE SALES, INC., and a separate, subsequent order of contempt and

imposition of fine against its President, Defendant JAMES W. WILLIAMS personally.

Because the Cameron County Court At Law No. 1 imposed the pecuniary fines, the

Southern District of Texas, Brownsville Division is the District where these fines accrued.

Venue for this action is proper pursuant to 28 U.S.C. § 1395(a). Moreover, because

the underlying case was filed, defended, and tried to verdict and Judgment in this

District, the Southern District of Texas, Brownsville Division has a substantial connection

to the claim, and a substantial part of the events giving rise to this claim occurred in this

district. Venue is proper therefore pursuant to 28 U.S.C. § 1391(a)(2). Lastly,

Defendants WILLIAMS FARMS, JAMES W. WILLIAMS, FAYE WILLIAMS, and MARK T.

WILLIAMS, at a minimum, are subject to personal jurisdiction in this District at the time

this action is commenced. Venue is proper under 28 U.S.C. § 1391(a)(3).

### V. Facts Relevant to All Causes of Action
*Background of Underlying Proceeding*

5.0     Plaintiff R&G PRODUCE COMPANY grew, sold, and shipped grape tomatoes

to buyers across the United States. The underlying dispute arose out of a series of

contracts for the sale of over 37,000 20 lb. boxes of grape tomatoes[4] by R&G

PRODUCE COMPANY to Defendant WILLIAMS FARMS from December 7, 2007

---

[4] To offer some perspective as to how large this quantity is, the evidence at trial was that over 21 18-wheel tractor trailers would be needed to haul them.

through February 20, 2008. The invoices totaled $664,325.80. R&G filed suit on sworn account on May 28, 2008 for the unpaid balance of $490,725.

5.1    After numerous delays from dilatory maneuvers and failed appeals[5] by WILLIAMS FARMS, jury trial began November 28, 2011. Defendants MARK T. WILLIAMS (the corporate representative at trial), JAMES W. WILLIAMS, and FAYE WILLIAMS, among others, testified on behalf of WILLIAMS FARMS.

5.2    On December 7, 2011, the jury returned a unanimous verdict in favor of R&G PRODUCE COMPANY, and against WILLIAMS FARMS PRODUCE SALES, INC., and awarded R&G damages of $2,332,596.44.[6] The Court granted Plaintiff's motion,[7] and entered Final Judgment on the verdict on December 13, 2011. Including pre-judgment interest, the Judgment amount is $2,668,730.44.[8] The judgment debtor has neither paid nor offered to pay any amount - let alone the judgment. There have been no settlement discussions.[9]

---

[5] On September 11, 2009, the Thirteenth Court of Appeals denied Williams Farms' motion for emergency relief and petition for writ of mandamus in *In re Williams Farms Produce, Inc.*, Civil Action No. 13-09-00507-cv. On September 17, 2010, the Supreme Court denied mandamus in *In re Williams Farms Produce Sales, Inc.*, Case No. 09-1077.

[6] The Charge of the Court and the jury's answers to questions is found at Exhibit 2.

[7] Plaintiff's Motion for Entry of Judgment, Brief In Support, and Memorandum Regarding Prejudgment Interest are found at Exhibit 22.

[8] The Final Judgment is found at Exhibit 3.

[9] Instead, Williams Farms' attorney Frank Perez of Brownsville has resorted to vulgarities, and the obscene middle finger gesture.

5.3    After a hearing on R&G PRODUCE COMPANY'S contest[10] to WILLIAMS FARMS' net worth Affidavit, the Court sustained R&G's contest, and determined WILLIAMS FARMS' current net worth to be $2 million. The Court set bond at $1 million, and gave the judgment debtor until April 30, 2012 to post bond, deposit or security in that amount.[11]

### *Williams Farms' Fraudulent Transfers of Cash to Avoid Satisfaction of Judgment*

5.4    To date, WILLIAMS FARMS has failed to post bond, deposit or security in any amount.  This, despite the following facts from its federal tax returns and corporate bank records that the Court ordered[12] WILLIAMS FARMS to produce in response to post-judgment discovery in aid of judgment:

1.    In 2006, WILLIAMS FARMS had gross receipts or sales of $38,337,125 and total income of $1,228,768.

2.    In 2007, WILLIAMS FARMS had gross receipts or sales of $35,023,032 and total income of $1,210,734.

3.    In 2008, WILLIAMS FARMS had gross receipts or sales of $30,507,551 and total income of $2,732,427.

4.    In 2009, WILLIAMS FARMS had gross receipts or sales of $42,567,996 and total income of $3,845,668.

5.    In 2010, WILLIAMS FARMS had gross receipts or sales of $28,840,458 and total income of $2,169,948.

---

[10] A copy of R&G Produce Company's Contest to Judgment Debtor's Net Worth Affidavit is found at Exhibit 19.

[11] The Order Sustaining R&G Produce Company's Contest to Judgment Debtor's Net Worth Affidavit is found at Exhibit 4.

[12] *See* Order Granting Plaintiff's Motion to Compel Responses to Post-Judgment Discovery found at Exhibit 5.

6.     In the last three tax returns, WILLIAMS FARMS had gross sales of $101 million and total income of $8.7 million.

7.     Williams Farms Produce Sales, Inc.'s bank account ending in 8262 had $484,055.49 in deposits from January 2011 to January 2012.

8.     Williams Farms Produce Sales, Inc.'s bank account ending in 8189 had $9,079,685.34 in deposits from January 2011 to January 2012.

9.     Williams Farms Produce Sales, Inc.'s bank account ending in 7405 had $29,872,796.04 in deposits from January 2011 to January 2012.

5.5     In its last three tax returns,[13] WILLIAMS FARMS reported gross sales of $101 million, and total income of $8.7 million. Corporate bank records establish that in the 12-month period before the jury verdict, WILLIAMS FARMS deposited a total of $39,436,536.87 in three different South Carolina banks in accounts in the name of the judgment debtor, WILLIAMS FARMS PRODUCE SALES, INC.

5.6     By orders of March 13[14] and April 10, 2012[15], the trial court enjoined WILLIAMS FARMS from dissipating or transferring assets to avoid satisfaction of the judgment.

---

[13] Despite two separate orders compelling it, the judgment debtor continues to refuse to produce its 2011 corporate tax return. The Court's February 7, 2012 Order Granting Plaintiff's Motion to Compel Responses to Post-Judgment Discovery is found at Exhibit 5. The Court's June 26, 2012 Order Granting R&G Produce Company's Motion to Modify Confidentiality Order Regarding Tax Returns & Motion to Compel Production of 2011 Return is found at Exhibit 6. Additionally, none of the individual defendants have produced their personal tax returns and other financial documents the Court ordered them to produce. See Order of Contempt Against James W. Williams found at Exhibit 12.

[14] The Court's March 13, 2012 Order Enjoining Judgment Debtor's Transfer or Dissipation of Assets is found at Exhibit 7.

[15] See Exhibit 4, p. 3.

5.7    That large amounts of cash transferred out of the judgment debtor corporation were made by, for, or with the acquiescence of WILLIAMS FARM PRODUCE SALES, INC. with actual intent to hinder, delay, or defraud Plaintiff is evidenced first through expert testimony[16] from Paul W. Peeler, Plaintiff's expert C.P.A. from Corpus Christi, Texas. Mr. Peeler, who has been preparing tax returns and performing audit services for over 34 years, is Gracie Lopez' accountant, and had prepared her returns and those of her company, R&G PRODUCE COMPANY. Mr. Peeler was deposed in 2009, and was one of four experts Plaintiff called at trial.

5.8    Mr. Peeler's assignment after trial was to render his opinion of the net worth of WILLIAMS FARMS PRODUCE SALES, INC.

5.9    To arrive at his opinion, Mr. Peeler reviewed WILLIAMS FARMS PRODUCE SALES, INC. corporate tax returns for the years 2006, 2007, 2008, 2009, and 2010. Peeler also reviewed bank records the judgment debtor's bank records from January 2011 to January 2012.

5.10   After first commenting that none of the returns were prepared by a C.P.A., Mr. Peeler found that in years 2006, 2007, 2008, and 2009, WILLIAMS FARMS reported a "strong profit." 2010, however, showed an alleged net loss of $600,000. Peeler

---

[16] See Affidavit of Paul W. Peeler, C.P.A. found at Exhibit 9.

found the alleged loss "suspicious," and attributed it to "the approaching trial date of this lawsuit."[17]

5.11    In addition, "the 2009 return has several large discrepancies," Peeler found. First, while the 2009 return reported a profit of $1.4 million, "the year-end retained earnings show a $4.1 million deficit." Second, Schedule L, Line 24 (retained earnings) Column D on page 4 of the return did not agree with Schedule M-2, Line 8. "These two amounts should agree or at least be close, but they are not in this return," said Peeler. Third, "as a result, there is a $6.9 million discrepancy," Peeler observed, adding "(s)omething is definitely not correct about this return."[18]

5.12    Indeed, Peeler made this telling conclusion:

"I find the tax return for 2009, the same year my deposition was taken in this case, to be extremely problematic. $6.9 million disappeared from the corporate balance sheet, and I cannot trace it with the documents provided. In my opinion, based on my over 30 years experience as a C.P.A., someone 'cooked the books' for that year for the purpose of making it appear that WILLIAMS FARMS PRODUCE SALES, INC. had less money that it actually had."

See Affidavit of Paul W. Peeler, C.P.A., Exhibit 9, p. 2 (emphasis added).

5.13    Peeler's testimony regarding WILLIAMS FARMS' "suspicious" 2009 tax return presaged what WILLIAMS FARMS attempted to show through the March 8, 2012

---

[17] *Id.*

[18] *Id.*

Affidavit of Defendant MARK T. WILLIAMS[19] who, after suffering a multi-million dollar adverse verdict in the underlying case, tried to make it appear that WILLIAMS FARMS "had less money than it actually had."

5.14    Indeed, Defendant MARK T. WILLIAMS' affidavit is additional evidence that WILLIAMS FARMS violated the Court's orders enjoining the dissipation of assets, and instead transferred substantial cash out of the corporation with actual intent to hinder, delay, or defraud Plaintiff. WILLIAMS' affidavit claims the debtor corporation's net worth is $-52,802.00, and that it has only $3,128 in cash on hand.[20]

5.15    With respect to the transfers of substantial cash out of the judgment debtor corporation, made by, for, or with the acquiescence of WILLIAMS FARMS PRODUCE SALES, INC., the following badges of fraud, among others, are applicable and are to be considered in determining actual intent:

(a)    the transfers were to an insider or insiders;

(b)    WILLIAMS FARMS retained possession or control of the property after it was transferred;

(c)    before the transfers were made, WILLIAMS FARMS had been sued or threatened with suit;

(d)    WILLIAMS FARMS removed or concealed assets;

---

[19] See Exhibit 8.

[20] See Affidavit of Paul W. Peeler, C.P.A. found at Exhibit 9.

(e)     little or no consideration was received by WILLIAMS FARMS in exchange for the transfers;

(f)     the transfers occurred shortly before or shortly after a substantial debt was incurred.

<u>Williams Farms' Fraudulent Transfer of Cause of Action<br>to Avoid Satisfaction of Judgment</u>

5.16   As mentioned above, large amounts of cash were not the only assets WILLIAMS FARMS fraudulently transferred to avoid satisfaction of judgment. WILLIAMS FARMS also attempted to fraudulently transfer a cause of action for money damages[21] it is asserting in the United States District Court in South Carolina.

5.17   On June 8, 2011, WILLIAMS FARMS PRODUCE SALES, INC. sued the federal government and the FDA in the United States District Court, For the District of South Carolina, Charleston Division.[22] In its complaint, WILLIAMS FARMS PRODUCE SALES, INC. states it is a commercial grower of fruits and vegetables, including tomatoes, and that it grows over 500 acres of tomatoes in Florida and South Carolina each year. WILLIAMS FARMS sued under the Federal Tort Claims Act for money damages, alleging that the government's 2008 "nationwide recall of all tomatoes" caused it to suffer monetary damage. WILLIAMS FARMS prayed for judgment for damages in the

---

[21] A cause of action is a property right and can be subject to turnover under Texas law. *See Charles v. Tamez*, 878 S.W.2d 201, 205 (Tex. App. – Corpus Christi 1994, writ denied); *Associated Ready Mix, Inc. v. Douglas*, 843 S.W.2d 758, 762 (Tex. App. – Waco 1992, orig. proceeding); *Main Place Custom Homes, Inc. v Honaker*, 192 S.W.3d 604, 627 (Tex. App. – Ft. Worth 2006, pet. denied); *Eastern Bloc Entertainment, Ltd. v. Abco Properties, Inc.*, No. 01-08-00238-CV (Tex. App.  Houston [1ˢᵗ Dist.] 2010).

[22] The complaint is found at Exhibit 20. Attorney Mark D. Ball of Hampton, South Carolina represents the judgment debtor in that action.

amount of $11,147.577, plus other damages, including treble damages, attorneys' fees, and other relief.[23]

5.18   As mentioned, WILLIAMS FARMS complaint against the federal government was filed in June 2011. As recently as March 29, 2012, WILLIAMS FARMS PRODUCE SALES, INC. answered interrogatories that it was the Plaintiff in that case.[24]

5.19   However, as the findings in the attached Order of Contempt reflect,[25] on April 10, 2012 - minutes after losing a pivotal hearing in Cameron County on the contest to WILLIAMS FARMS' net worth – an entity called "Williams Farms of South Carolina L.L.C." was formed in South Carolina. The organizer was Defendant MARK T. WILLIAMS. The registered agent was attorney Mark D. Ball.[26]

5.20   One week later, on April 17, 2012, R&G advised WILLIAMS FARMS and lawyer Ball in writing of R&G PRODUCE COMPANY's intention to seek turnover relief, including turnover of the action for money damages WILLIAMS FARMS was asserting against the federal government in South Carolina. R&G filed its Application for

---

[23] *Id.*

[24] See Williams Farms Produce Sales, Inc.'s Answers to Local Rule 26.03 Disclosures found at Exhibit 14.

[25] See Order of Contempt, ¶¶ 4 & 5, found at Exhibit 10.

[26] *See* Exhibit 18. Ball, who is also representing Williams Farms in the suit against the federal government in South Carolina, has appeared on behalf of Williams Farms in the underlying case; telephonically at the deposition of Williams Farms' corporate representative, and in person at the depositions of Defendants James W. Williams and Faye Williams, and Williams Farms' employee Steven "Will" Willis. *See* Exhibit 16.

Turnover Relief[27] the next day. Attorneys Ball and Frank Perez of Brownsville, WILLIAMS FARMS' counsel in the underlying suit, were advised in writing on April 18 that the application for turnover relief had been filed.[28] On April 22, R&G advised WILLIAMS FARMS and Ball that R&G would be serving the government's attorney in its case with notice of R&G's Application for Turnover Relief.[29]

5.21    On April 23, 2012, the day after WILLIAMS FARMS (through Ball) learned that the United States Attorney for South Carolina would be told of R&G's Application for Turnover Relief, Ball clumsily and hastily amended the complaint, deleting "WILLIAMS FARMS PRODUCE SALES, INC." as the Plaintiff (contrary to its Rule 26 Answers[30] a month prior), and naming "WILLIAMS FARMS LLC" in its stead.[31]

5.22    However, according to the Secretary of State of South Carolina, "Williams Farms LLC" doesn't exist,[32] the County Court At Law No. 1 found. The Court further found that WILLIAMS FARMS PRODUCE SALES, INC.'S amended complaint of April 23, 2012 "constitutes a transfer of property or assets, namely its causes of action, in

---

[27] A copy of the Application for Turnover Relief is found at Exhibit 11. The Court granted the Application on May 4, 2012. *See* Turnover Order found at Exhibit 13.

[28] *See* Exhibit 10, ¶¶ 6 & 7.

[29] *See* Exhibit 10, ¶¶ 8 & 9.

[30] *See* Williams Farms Produce Sales, Inc.'s Answers to Local Rule 26.03 Disclosures found at Exhibit 14.

[31] See the Amended Complaint found at Exhibit 21.

[32] *See* Exhibit 17.

direct violation of the Court's orders enjoining dissipation or transfer of assets to avoid satisfaction of judgment."[33]

5.23    With respect to the transfer of its cause of action out of the judgment debtor corporation made by, for, or with the acquiescence of WILLIAMS FARMS PRODUCES SALES, INC., the following badges of fraud, among others, are applicable and are to be considered in determining actual intent:

    (a)    the transfer was to an insider or insiders;

    (b)    WILLIAMS FARMS retained possession or control of the property after it was transferred;

    (c)    before the transfer was made, WILLIAMS FARMS had been sued or threatened with suit;

    (d)    WILLIAMS FARMS removed or concealed assets;

    (e)    little or no consideration was received by WILLIAMS FARMS in exchange for the transfer;

    (f)    the transfer occurred shortly before or shortly after a substantial debt was incurred.

## VI. First Cause of Action: Fraudulent Transfer

6.0    Plaintiff re-alleges and incorporates by reference the allegations set forth in ¶¶ 5.0 – 5.23 of this Complaint as if fully set forth herein. At the time of the transfers herein described, Plaintiff R&G PRODUCE COMPANY was a "creditor" of Defendant WILLIAMS FARMS PRODUCE SALES, INC., as that term is defined in TEX. BUS. &

---

[33] *Id.,* ¶¶ 11 & 12.

COMM. CODE § 24.002(4). The transfers described above were fraudulent as to Plaintiff under TEX. BUS. & COMM. CODE §§ 24.005 & 24.006 because the transfers were made by, for, or with the acquiescence of WILLIAMS FARMS PRODUCES SALES, INC., with actual intent to hinder, delay, or defraud Plaintiff.

6.1    Plaintiff seeks the following remedies as provided in TEX. BUS. & COMM. CODE § 24.008:

> 1.    avoidance of the transfers described above to the extent necessary to satisfy Plaintiff's judgment;
>
> 2.    attachment of the assets the subject of the transfers described above;
>
> 3.    an injunction against any further disposition by the debtor or transferee or both of the assets transferred;
>
> 4.    execution of the assets transferred or the proceeds therefrom;
>
> 5.    imposition of a constructive trust on all assets the subject of the transfers described above;
>
> 6.    attorneys' fees and costs as provided in TEX. BUS. & COMM. CODE § 24.013; and
>
> 7.    any other relief the circumstances may require.

### VII. Second Cause of Action: Civil Conspiracy

7.0    Plaintiff re-alleges and incorporates by reference the allegations set forth in ¶¶ 5.0 – 5.23 of this Complaint as if fully set forth herein. The Defendants were members of a combination of two or more persons; the object of the combination was to accomplish an unlawful purpose, namely to fraudulently dissipate or transfer assets to

avoid satisfaction of judgment; the Defendants had a meeting of the minds on the object or course of action; one of the Defendants committed an unlawful, overt act to further the object or course of action; and the Plaintiff suffered injury as a proximate result of the wrongful act. As a result of the conspiracy, Defendants are jointly and severally liable to Plaintiff for the judgment amount.

## VIII. Claim for Exemplary Damages

8.0     Plaintiff re-alleges and incorporates by reference the allegations set forth in ¶¶ 5.0 – 5.23 of this Complaint as if fully set forth herein. The conduct of Defendants as described above rose to the level of malice under the laws of Texas, because the actions of the Defendants, when viewed objectively at the time of the occurrence, involved an extreme degree of risk considering the probability and magnitude of the potential harm to others; and of which Defendants had actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. Plaintiff requests exemplary damages be awarded in an amount to be determined in the sole discretion of the trier of fact, and in an amount which will deter this type of abhorrent conduct in the future.

## IX. Conditions Precedent

9.0     All conditions precedent of Plaintiff's cause of action have occurred or have been performed.

## X. <u>Jury Demand</u>

10.    Plaintiff demands trial by jury and will timely tender the appropriate fee.

## <u>Prayer</u>

WHEREFORE, Plaintiff prays that Defendants each receive summons and complaint herein and be cited to appear and answer herein in the terms of law, and that upon final jury trial hereon, Plaintiff recover judgment for avoidance of the transfers described above, attachment of the assets subject to the transfers described above, an injunction against any further disposition by the debtor or transferee or both of the assets transferred, execution of the assets transferred or the proceeds therefrom, imposition of a constructive trust on all of the assets the subject of the transfers described above, attorneys' fees and costs, and any other relief the circumstances may require. Plaintiff further prays for judgment against the Defendants jointly and severally for damages for civil conspiracy. Plaintiff prays for exemplary damages, prejudgment interest, costs of court, and such other and further relief to which Plaintiff may be justly entitled.

Respectfully Submitted,

**THE ZAVALETTA LAW FIRM**
603 E. St. Charles Street
Brownsville, Texas 78520
Telephone (956) 546-5567
*Email:*      pmz12@mac.com
ATTORNEYS FOR PLAINTIFF

By: _____
      PETER M. ZAVALETTA
      State Bar No. 22251600
      Federal Bar Id. 7582